[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 17, 2011
JOHN LEY
CLERK

No. 10-13570
Non-Argument Calendar
_____

Agency No. A077-925-153

CHRISTIAN ALEXANDER MINAN CARRERA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(March 17, 2011)

Before TJOFLAT, BARKETT and KRAVITCH, Circuit Judges.

PER CURIAM:

Christian Alexander Minan Carrera is a native and citizen of Ecuador. He

arrived in the United States, at the Miami International Airport, without

documentation on April 14, 2000 and was detained after indicating that he was seeking asylum. On April 25, 2000, an immigration officer interviewed Minan and found that his fear of future persecution in Ecuador was credible. On April 26, 2000, he was served with a Notice to Appear ("NTA"), charging him with removability under Immigration and Nationality Act ("INA") § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(a)(i)(I). The NTA instructed him to provide the Immigration and Naturalization Service ("INS") with his mailing address and informed him of the legal consequences that would result if he failed to do that.[1] The same day, April 26, Minan was served with a notice that his removal hearing would be held before the Immigration Court on May 16 in Miami. On April 27, he was paroled into the United States and, on being released from detention, notified the INS that his address would be: "3702 New York Ave., Union City, NJ."[2] On May 8, 2000, a second notice of hearing in removal proceedings was mailed to

---

[1] Specifically, the NTA stated that Minan was "required to provide the INS, in writing, with [his] full mailing address and telephone number [and to] notify the Immigration Court immediately by using Form EOIR-33 whenever [he] change[d his] address or telephone number during the course of this proceeding." The NTA also stated that the "Notice of [the removal/asylum] hearing will be mailed to this address." Finally, the NTA warned him that, if he did not submit "Form EOIR-33 and [did] not otherwise provide an address at which [he] may be reached during proceedings, then the Government shall not be required to provide [him] with written notice of [his] hearing. If [he] fail[ed] to attend the hearing at the time . . . a removal order may be made by the immigration judge in [his] absence. . . ."

[2] Minan notified the INS of this address on Form I-830, "Notice to EOIR: Alien Address." On this form, Minan indicated that he had been provided with an EOIR change of address form, Form EOIR-33.

Minan at the above address. The notice stated that the hearing would be held before the Immigration Court on June 7, 2000, and warned Minan regarding the failure to appear at the hearing.

Minan failed to appear at the June 7 removal hearing. After determining that he had been given written notification of the time, date, and location of the hearing and a written warning of the consequences of failing to appeal, the Immigration Judge ("IJ") ordered him removed to Ecuador.

On February 16, 2010, Minan, who had been detained by the Department of Homeland Security ("DHS"), filed a motion with the Immigration Court to reopen his removal proceedings on the ground that he had not been served with the notice of the June 7, 2000 hearing. An IJ denied his motion on April 27, 2010, in a written order. The IJ found that Minan was at fault if he did not receive the notice of the June 7 hearing, i.e., he had given the INS an incomplete address,[3] that he failed to act diligently to file his application for asylum within one year of his

---

[3] The address Minan had given the INS was an apartment house. The address was incomplete because, as he readily acknowledged, he did not indicate the number of the apartment where he was to be staying, Apt. #3. The IJ noted in the written order that the Immigration Court's May 8, 2000 notice of hearing was not returned to the Immigration Court by the U.S. Postal Service; as a result, neither the Court nor the INS had any indication that Minan had not received the notice of hearing.

arrival in the United States, and that he failed diligently to address the legal effects of the June 7, 2000 removal order.[4]

Minan appealed the IJ's decision to the Board of Immigration Appeals ("BIA") on May 27, 2010, claiming that the IJ clearly erred in finding that the Immigration Court had mailed him the May 8, 2000 notice of hearing. That is, because the record contained no evidence that the notice of hearing was mailed according to normal office procedure, i.e., because the certificate of service was improperly executed and did not identify the person served or the manner of service, and no evidence which corroborated that he had been served with the notice, the IJ had no evidence to support the finding that the notice of hearing had been mailed to him.

The BIA affirmed the IJ's decision without opinion on July 12, 2010. Minan now petitions this court for review. He presents essentially the same argument he presented to the BIA: the record lacks any evidence that the notice of the June 7, 2000 hearing was mailed to him because the notice's certificate of service was improperly executed and identified neither the person served nor the

---

[4] According to the declaration attached to Minan' motion to reopen, during the 10-year hiatus between the IJ's issuance of the removal order and the filing of the motion to reopen, Minan and his wife divorced, on March 11, 2005; he married a U.S. citizen, on June 18, 2005; they had a son, born in October 2007; and his wife filed a visa petition in his behalf.

method of service.   According to Minan, because the IJ had no evidence to show that the notice was properly mailed, and because he, Minan, denied receiving the notice, the IJ's finding that he received the notice was unreasonable and the record compels the finding that service was not perfected on him.

Because the BIA summarily affirmed the IJ's order without an opinion, we review the IJ's decision as the agency's final order.  *See* 8 C.F.R. § 1003.1(e)(4); *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1284 n.1 (11th Cir. 2003).  We review for abuse of discretion the IJ's denial of Minan's motion to reopen.  *See Ali v. U.S. Att'y Gen.*, 443 F.3d 804, 808 (11th Cir. 2006).  "Our review is limited to determining whether there has been an exercise of administrative discretion and whether the matter of exercise has been arbitrary or capricious."  *Id.*

Any alien who does not attend a proceeding after written notice has been provided is subject to removal *in absentia* if the government establishes by "clear, unequivocal, and convincing evidence" that it gave written notice and that the alien was removable.  8 U.S.C. § 1229a(b)(5)(A), INA § 240(b)(5)(A).  "[A] mailing to the last known address is sufficient to satisfy the [government's] duty to provide an alien with notice of a [removal] proceeding."  *United States v. Zelaya*, 293 F.3d 1294, 1298 (11th Cir. 2002).  However, written notice is not required if the alien fails to provide the agency with his current address and telephone

number. 8 U.S.C. § 1229a(B)(5)(B), INA§ 240(b)(5)(C). Because the "alien has an affirmative duty to provide the government with a correct address," failure to provide it with a change of address precludes the alien from claiming that the government did not provide the notice of a hearing. *Dominguez v. U.S. Att'y Gen.*, 284 F.3d 1258, 1260 (11th Cir. 2002).

An alien may seek rescission of an *in absentia* removal order by filing a motion to reopen at any time if the alien demonstrates that he did not receive proper notice of the removal proceedings or that he was in federal or state custody at the time of the proceedings and the failure to appear was not his fault. 8 U.S.C. § 1229a(b)(5)(C), INA § 240(b)(5)(C). However, the BIA presumes receipt of an NTA or hearing notice sent by regular mail if:

> the notice was properly addressed and mailed according to normal office procedures. This presumption, however, is weaker than that accorded to notice sent by certified mail. Therefore, when a respondent seeks to reopen proceedings based on a claim of lack of receipt of notice, the question to be determined is whether the respondent has presented sufficient evidence to overcome the weaker presumption of delivery attached to notices delivered by regular mail.
> . . . .
> In determining whether a respondent has rebutted the weaker presumption of delivery . . ., an Immigration Judge may consider a variety of factors including, but not limited to, the following: (1) the respondent's affidavit; (2) affidavits from family members or other individuals who are knowledgeable about the facts relevant to whether notice was received; (3) the respondent's actions upon learning of the *in absentia* order, and whether due diligence was

6

exercised in seeking to redress the situation; (4) any prior affirmative application for relief, indicating that the respondent had an incentive to appear; (5) any prior application for relief filed with the Immigration Court or any prima facie evidence in the record or the respondent's motion of statutory eligibility for relief, indicating that the respondent had an incentive to appear; (6) the respondent's previous attendance at Immigration Court hearings, if applicable; and (7) any other circumstances or evidence indicating possible nonreceipt of notice.

*In re M-R-A-*, 24 I. & N. Dec. 665, 673-74 (BIA 2008) (citations omitted).

In the present case, Minan conceded that he was personally served with the NTA, which informed him of the requirement to immediately provide INS, now the DHS, with any address changes. Minan admitted that he did not provide a change of address to the DHS at any time during the almost ten years before he was detained. Because Minan failed to provide his complete address, the IJ was entitled to order his removal *in absentia*. *See* 8 U.S.C. § 1229a(b)(5)(B), INA § 240(b)(5)(B); *see also Dominguez*, 284 F.3d at 1260. Additionally, although the certificate of service did not identify the person served, the hearing notice identified Minan as the recipient and listed the address he provided when he was released on parole on April 27, 2000. The hearing notice was signed and dated by a member of the Immigration Court's staff, and the record lacks any evidence that the notice was returned as undelivered. Under these circumstances, the IJ did

7

not clearly err in concluding that Minan's self-serving declaration that he did not receive the notice had not overcome the presumption of effective service.

PETITION DENIED.