[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-13863
_____

Agency No. A089-422-039

QI HU SUN,
a.k.a. Qihu Sun,

Petitioner,

versus

UNITED STATES ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of the Decision of the
Board of Immigration Appeals
_____

(November 13, 2013)

Before HULL and ANDERSON, Circuit Judges, and MOTZ,* District Judge.

PER CURIAM:

_____

*Honorable J. Frederick Motz, United States District Judge for the District of Maryland, sitting by designation.

Qi Hu Sun, a native and citizen of China, seeks review of the Board of Immigration Appeals' ("BIA's") order affirming the immigration judge's ("IJ's") denial of his motion to reopen an in absentia order of removal.  On review, Sun argues that (1) the BIA abused its discretion in denying his motion to reopen his removal proceedings and to rescind the in absentia removal order because he was neither actually nor constructively served with notice of the proceedings, and with respect to the latter, that he rebutted the presumption of delivery of the Notice to Appear ("NTA") and the Notice of Hearing, which were mailed to his last known address; and (2) the BIA abused its discretion in denying his motion to reopen removal proceedings based on changed country conditions.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Sun married a United States citizen on July 22, 2006.  On March 25, 2007, Sun filed an application to adjust his status to lawful permanent resident based on his marriage.  The application listed Sun's address as 2650 Chambers Way, Duluth, Georgia, 30096.  In November 2007, Sun's status was adjusted to lawful permanent resident on a conditional basis, which gave Sun notice that he and his wife were required to file a joint petition to remove the conditions on his status by November 16, 2009.  At that time he was also granted a two-year conditional green card, which expired on November 17, 2009.  Sun never filed the joint petition or otherwise sought to remove the conditions on his status.

Sun and his wife lived together at the Chambers Way address until March 2008, at which time they separated.  Their divorce was final on February 10, 2009, and Sun claims that he and his ex-wife ceased all communication at that time.

Because Sun never contacted the Department of Homeland Security ("DHS") with respect to the removal of the conditions on his status, his legal status as a lawful permanent resident was terminated on March 4, 2010, thus subjecting him to removability.  On February 28, 2011, DHS sent Sun an NTA via regular mail, charging him with removability.  On March 8, 2011, the Atlanta Immigration Court sent Sun a Notice of Hearing via regular mail, setting his case for a hearing on April 27, 2011.  Both notices were sent to Sun's last known address, the Chambers Way address, which had appeared on his application for adjustment of status filed in March 2007.  Neither notice was returned to the government by the Postal Service.  Sun failed to appear at the April 27, 2011 hearing, and he was ordered removed in absentia.  Sun was arrested on May 31, 2011, at which time he contends that he learned for the first time about the NTA and the removal order.  On January 11, 2012, Sun filed a counseled motion to reopen, seeking rescission of the removal order on the grounds that he no longer resided at the Chambers Way address when the NTA and the Notice of Hearing were mailed and that he had not received or been aware of either notice.  Sun submitted an affidavit stating that he moved from the Chambers Way address to an address in Norcross in March 2008 and to another

Norcross address in July 2009, where he claims he lived when the NTA and the Notice of Hearing were mailed. However, Sun never advised the DHS of any change of address. Along with the motion to reopen, Sun also filed an application for asylum.

Both the IJ and the BIA denied Sun's motion to reopen, finding, inter alia: that the NTA and the Notice of Hearing had both been mailed by regular mail to Sun's last known address, i.e., the Chambers Way address; that neither notice had been returned by the Postal Service; that Sun had never notified the government of a change of address from the Chambers Way address, as required by 8 U.S.C. § 1305(a); and that Sun had failed to rebut the presumption that the NTA and the Notice of Hearing had been received by him. In sum, both the IJ and the BIA found that Sun was charged with having received the NTA and the Notice of Hearing and that it was thus not appropriate to reopen the proceedings or rescind the in absentia removal order.

When the BIA issues its own opinion, we review only that decision, except to the extent that it expressly adopts the IJ's reasoning of decision. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). Here, because the BIA issued its own opinion but explicitly adopted the IJ's reasoning and factual findings, we review both the BIA's and the IJ's decisions. See id. (reviewing the IJ's decision to the extent that the BIA found that its reasoning was supported by the record).

4

We review the BIA's denial of a motion to reopen for an abuse of discretion.  Ali v. U.S. Att'y Gen., 443 F.3d 804, 808 (11th Cir. 2006).

## II.  SUN FAILED TO REBUT THE PRESUMPTION OF DELIVERY OF THE NTA AND THE NOTICE OF HEARING SUCH THAT HE IS CHARGED WITH HAVING RECEIVED THEM.

In this case, Sun does not dispute that a presumption of receipt of the NTA and/or a Notice of Hearing applies here because the notices were sent by regular mail properly addressed to the alien's last known address.  Rather, Sun argues the presumption is a weak one because service was by regular mail and the BIA and IJ erred in the finding that he had not rebutted the presumption of receipt.

Although this presumption is weaker than the one accorded to a notice sent by certified mail, the cases have indicated a non-exhaustive list of factors to be considered in determining whether an alien has overcome the presumption of receipt.  These factors include: (1) the alien's affidavit; (2) affidavits from family members or other individuals who are knowledgeable about the facts relevant to whether notice was received; (3) the alien's actions upon learning of the in absentia order and whether he exercised due diligence in seeking to redress the situation; (4) any prior affirmative application for relief, indicating that the alien had an incentive to appear; (5) any prior application for relief filed with the Immigration Court or any prima facie evidence in the record or in the alien's motion of statutory eligibility for relief, indicating that the alien had an incentive to appear; (6) the

alien's previous attendance at Immigration Court hearings, if applicable; and (7) any other circumstances or evidence indicating possible nonreceipt of notice. Matter of M-R-A-, 24 I. & N. Dec. 665, 674 (BIA 2008).

Both the IJ and the BIA in this case considered the foregoing factors and found that Sun had failed to rebut the presumption that he received both the NTA and the Notice of Hearing.[1]  We cannot conclude that the IJ and the BIA erred in finding that Sun did not have an incentive to appear at the April 27, 2011 hearing about which he was placed on notice by the NTA and the Notice of Hearing.  As of November 17, 2009, Sun had not filed the appropriate documents to remove the conditions on his conditional lawful permanent resident status.  We cannot conclude that the IJ erred in finding that Sun knew that if he wished to lawfully remain in the United States, the law imposed on him a duty to remove the conditions on his residency, and thus his failure to take action to remove such conditions constituted an abandonment of his claim for lawful permanent resident status.  Accordingly, we find no fault with the conclusion of the IJ and the BIA that Sun lacked an incentive to appear at the April 27, 2011 hearing.  This is a significant factor in the determination of whether an alien has rebutted the presumption of receipt of notice.

---

[1]      Because we agree with the IJ and the BIA that Sun is properly charged with constructive notice of the NTA and the Notice of Hearing, we need not address the finding that Sun was still actually living at the Chambers Way address when the NTA was mailed on February 28, 2011.

The IJ and the BIA also found against Sun with respect to another significant factor in the determination.  Both the IJ and the BIA found that Sun had failed to exercise due diligence in seeking to redress his failure to appear at the April 27, 2011 hearing and the resulting in absentia removal order.  We agree.  Even accepting Sun's assertion that he learned of the hearing and the removal order only at the time of his arrest on May 31, 2011, he nevertheless delayed over seven months until his January 11, 2012 filing of the instant motion to reopen.  Moreover, we agree with the IJ that this lack of due diligence was compounded by Sun's lack of diligence in seeking to remove the conditions on his permanent residence.  As the IJ noted, Sun has adduced no evidence at all that he exercised due diligence in either respect.

The BIA also relied on the fact that neither the NTA nor the Notice of Hearing were returned to the government by the Postal Service.  This is some evidence that they were in fact delivered to Sun's last known address and supports the conclusion that he can be charged with receipt of the notices.[2]

For the foregoing reasons, we cannot conclude that the IJ and the BIA erred

---

[2]    Although not expressly relied upon by the IJ or the BIA, we also note that Sun failed to present any evidence to corroborate his self-serving assertions that he was not in fact aware of the NTA and the Notice of Hearing or his self-serving suggestion that his ex-wife might have kept the information from him because of feelings of hostility.  It does not seem plausible that corroborating evidence would not have been available.  The IJ did note and rely upon the fact that Sun should have known that he continued to live in the United States unlawfully for several years (i.e., after November 17, 2009 when his conditional green card expired) without attempting to contact the government or rectify his unlawful status.

7

in charging Sun with notice of the NTA and the Notice of Hearing.  Because Sun is thus deemed to have received the NTA and the Notice of Hearing, Sun's reliance upon In re G-Y-R-, 23 I. & N. Dec. 181 (BIA 2001), and Matter of Anyelo, 25 I. & N. Dec. 337 (BIA 2010), is misplaced.  In neither case could the alien be properly charged with having received the NTA.  In In re G-Y-R-, it was clear that the NTA was returned to the government from the Postal Service, and this was apparently also the case in Matter of Anyelo (because it was "undisputed" there that the alien did not receive the NTA and could not properly be charged with having received it).  Unlike in those two decisions, in this case, neither the NTA nor the Notice of Hearing was returned to the government by the Postal Service, and Sun could properly be charged with having received the notices.  Therefore, the in absentia removal order was not improper.  See Matter of Anyelo, 25 I. & N. Dec. at 339 ("[A]n Immigration Judge therefore has no authority to order an alien's removal from the United States in absentia unless the alien has received (or can be properly charged with receiving), at his last provided address, the . . . warnings and advisals contained in the Notice to Appear." (emphasis added)); In re G-Y-R-, 23 I. & N. Dec. at 189-90 ("This does not mean, of course, that the alien must personally receive, read, and understand the Notice to Appear for the notice requirements to be satisfied.  An alien can, in certain circumstances, be properly charged with receiving notice, even though he or she did not personally see the mailed document.

8

. . . If the alien actually receives or <u>can be charged with receiving</u> that mailed notice, then the address used by the Service qualifies . . . and in absentia proceedings are thereafter authorized." (emphasis added)).  Thus, because Sun could be charged with receipt of the notices, unlike the aliens in <u>In re G-Y-R-</u> and <u>Matter of Anyelo</u>, our holding is not inconsistent with those opinions.

Furthermore, the government here relies on our decision in <u>Dominguez v. U.S. Attorney General</u>, 284 F.3d 1258 (11th Cir. 2002), to argue that because Sun failed to notify the government of his change of address, he cannot now complain of a lack of notice to have the <u>in absentia</u> removal order rescinded.  We note that there appears to be some tension between our decision in <u>Dominguez</u> and the BIA's decisions in <u>In re G-Y-R-</u> and <u>Matter of Anyelo</u>.  <u>Dominguez</u> suggests that an alien's failure to notify the government of a change of address as required under 8 U.S.C. § 1305(a) bars the alien from complaining of a lack of notice when notice was mailed to the alien's last known address, 284 F.3d at 1260, while <u>In re G-Y-R-</u> expressly rejects that proposition and <u>Matter of Anyelo</u> limits <u>Dominguez</u> to a due process analysis and reaffirms <u>In re G-Y-R-</u>.  However, we have distinguished this case from <u>In re G-Y-R-</u> and <u>Matter of Anyelo</u> on the basis that the NTA in those cases was returned by the Postal Service, and the aliens in those cases could not be charged with notice.  By contrast, the NTA was not returned by the Postal Service in this case, and Sun could properly be charged with receipt of the NTA and the

9

Notice of Hearing.  Because In re G-Y-R- and Matter of Anyelo are readily

distinguished, we need not resolve that tension to decide the petition currently

before the Court, and this case therefore does not present an appropriate opportunity

to do so.

For the foregoing reasons, we cannot conclude that the IJ and the BIA abused

their discretion in declining to reopen these proceedings to rescind the in absentia

removal order.[3]

III.    THE IJ AND THE BIA DID NOT ABUSE THEIR DISCRETION
        IN DENYING SUN'S MOTION TO REOPEN BASED ON
        CHANGED COUNTRY CONDITIONS.

Neither below nor in Sun's brief on appeal does he point to evidence of

changed country conditions in China.  Accordingly, we cannot conclude that the IJ

and the BIA abused their discretion in denying Sun's motion to reopen removal

proceedings based on changed country conditions.

PETITION DENIED.

---

[3]    We reject without need for discussion Sun's argument that the IJ ignored relevant evidence.  Although Sun has already been deported to China, this does not moot his appeal.